In re SOUTHERN DIVERSIFIED PROPERTIES, INC., Debtor.

Bankruptcy No. 89–03661–SWC.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Feb. 23, 1990.

Paul H. Anderson, Jr., Gambrell, Clarke, Anderson & Stolz, Atlanta, Ga., for applicant.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is the application, as amended, of Gambrell, Clarke, Anderson & Stolz for allowance of compensation. Applicant seeks the allowance of attorney's fees under 11 U.S.C. § 503(b)(3)(D) and (b)(4) or, alternatively, under the doctrine of *quantum meruit* and the court's equitable powers under 11 U.S.C. § 105. This is a core proceeding under 28 U.S.C. § 157(b). After a review of the record and the applicable law, the court makes the following findings and conclusions:

## FACTS

On August 31, 1989, Assistant United States Trustee Don Walton called Mr. Paul Anderson, a partner in Gambrell, Clarke, Anderson & Stolz ("Gambrell, Clarke" or "applicant"), and informed him that he would be appointed Chapter 11 trustee in this case and urged a prompt investigation

into certain facts relating to a pending motion to lift stay. The following day, September 1, 1989, Mr. Anderson learned of a potential conflict of interest from one of his law partners regarding the appointment. Notwithstanding the possible disqualifying conflict, Mr. Anderson did not give priority to the determination of whether or not such a conflict actually existed. Instead, he began a simultaneous investigation of the possible conflict of interest and the facts of the Chapter 11 case.

On September 5, 1989, Mr. Anderson reviewed the debtor's schedules for the first time. Following a discussion, thereafter, with one of his law partners, Mr. Anderson concluded that he had an actual conflict of interest because of his law partner's previous representation of two of the scheduled creditors. *Application of Gambrell, Clarke, Anderson & Stolz for Allowance of Compensation* ¶ 4 (filed Oct. 31, 1989) [hereinafter *Application*]. Two days later, on September 7, Mr. Anderson informed the United States Trustee's office that he could not serve as trustee. Gambrell, Clarke seeks compensation for legal services personally performed by Mr. Anderson for the law firm. These services were rendered while Mr. Anderson was the Chapter 11 trustee, both prior to and after the determination that he was disqualified to serve as trustee. Notwithstanding disqualification, the law firm and Mr. Anderson contend that the legal services rendered by him for his law firm are compensable.

Gambrell, Clarke asserted in its initial application that the court should approve the payment of $1,890.00 for 13.5 hours of professional legal services rendered by Mr. Anderson as a law firm attorney because of the exigencies of the case and because the services saved the successor trustee valuable time in investigating certain issues, resulted in the turnover of $13,863.00 in rents to the estate, assisted the successor trustee in the administration of the estate, and otherwise provided a substantial contribution to the case. In the amendment to the application, the law firm reduced its request from $1,890.00 to $1,610.00, on request of the United States

Trustee, to eliminate time spent in preparing for and attending the hearing on the application. The amendment also seeks reimbursement of $61.88 for expenses incurred in service of notice of the law firm's fee application. By way of disclosure, the amendment added 3.3 hours for "fiduciary services" of Mr. Anderson in his capacity as trustee, though no allowance is sought for such trustee services.

## DISCUSSION

■ Initially, the court observes that Mr. Anderson acted properly by declining to serve as trustee once he concluded a conflict of interest existed and he was not disinterested. *See Arkansas Communities, Inc. v. Mitchell,* 46 B.R. 403, 404 (W.D.Ark.1983); *In re Paolino,* 80 B.R. 341, 344 (Bankr.E.D.Pa.1987); *Hassett v. McColley (In re O.P.M. Leasing Servs., Inc.),* 16 B.R. 932, 937 (Bankr.S.D.N.Y. 1982). Upon learning on September 1 that he had a potential conflict of interest, Mr. Anderson should have made its resolution his first priority. While it is regrettable that a diligent trustee's law firm may be penalized, the court cannot permit the circumvention of the mandate of the Bankruptcy Code and Rules requiring disinterested representation of a debtor's estate. *See* 11 U.S.C. § 1104(c). Even the applicant law firm seems to recognize this problem since it has not requested the allowance of compensation under section 330 of the Code. In fact, the application appears to have been carefully drafted to indicate the legal services were rendered for the Chapter 11 trustee without actually characterizing them as such.

■ No satisfactory explanation has been given for Mr. Anderson's delay until September 5 in reviewing the schedules and verifying the existence of the conflict. Prompt review of a debtor's filings is a fundamental requisite to acceptance of appointment and qualification of a trustee, if such conflicts are to be avoided. Ordinarily, the exigencies of a case cannot be permitted to outweigh the Code mandate requiring disinterested representation of the

estate. Here, by a prompt review of the schedules on September 1, Mr. Anderson could have verified the conflict and declined the trustee appointment before any services were performed.

■■■ The applicant law firm acknowledges that Mr. Anderson had a conflict of interest and was disqualified to serve as trustee. There has been no contention nor any evidence presented showing that the law firm was not similarly disqualified to represent the trustee. Absent such an evidentiary showing, and to avoid any appearance of impropriety, the court concludes that the disqualification of one member of the law firm also results in the disqualification of all members of the firm. *See In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 338 n. 11 (E.D.Pa.1982); *In re Paolino,* 80 B.R. at 345. Although there are certain limited exceptions to the disqualification of professional persons under 11 U.S.C. § 327(c), such exceptions do not appear to apply in view of the acknowledged actual conflict of interest presented in this case. Gambrell, Clarke cannot avoid the consequences of that disqualification by the unauthorized rendering of legal services to the trustee. The problem is further aggravated by the fact that the named trustee, Mr. Anderson, personally performed the unauthorized legal services on behalf of his own law firm. Mr. Anderson neither sought nor obtained court approval to employ counsel as required by 11 U.S.C. § 327(a) and Bankruptcy Rule 2014. Presumably, the law firm has not applied for compensation under 11 U.S.C. § 330 because of the disqualification and lack of court approval.

■■ The law firm seeks allowance of compensation for the subject services under 11 U.S.C. § 503(b)(3)(D) and (b)(4) as "reasonable compensation for professional services" of an attorney representing "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders ... in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D), (b)(4). The law firm does not contend that it actually repre-

sented an entity identified in section 503(b)(3)(D). Rather, applicant contends that the services are compensable under 11 U.S.C. § 503(b)(3)(D) and (b)(4) because the "services would have been compensable had there been no conflict of interest and ... because their previous representation of creditors in this case created the conflict." *Application, supra,* ¶ 11, at 5. Applicant thus advances the novel argument that since prior creditor representation resulted in disqualification of both Mr. Anderson, as trustee, and the law firm, as his attorney, the legal services barred by such conflict may nevertheless be compensated "as if" the law firm represented those creditors in rendering the subject legal services. Such result not only would violate both the spirit and letter of the Bankruptcy Code, but also would serve to validate and reward the very conflict of interest which the Code seeks to prohibit. This the court cannot permit.

The applicant law firm represented Mr. Anderson, the Chapter 11 trustee, not any creditors or other entities listed in section 503(b)(3)(D). The fact that the law firm previously had represented certain of this debtor's creditors is irrelevant for purposes of invoking section 503(b)(3)(D) and (b)(4). While the services might be compensable under proper circumstances, this court can find no statutory or case law authority permitting an allowance for unauthorized legal services "as if" the law firm represented one of the entities specified in section 503(b)(3)(D). From the plain language of the statute, it is obvious that section 503(b)(3)(D) and (b)(4) does not apply.

■■ Courts consistently have held that professionals cannot circumvent the requirements of 11 U.S.C. § 327(a) by seeking compensation as a general administrative expense under section 503(b) when they would have been denied compensation for the same activities under the former section. *See F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.),* 844 F.2d 99, 108–09 (3d Cir.1988), *cert. denied,* ——— U.S. ———, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *In re Cutler Mfg. Corp.,* 95 B.R. 230, 231 (Bankr.M.D.Fla.1989); *In re Wil-*

liam A. Smith Constr. Co., 92 B.R. 757, 759 (Bankr.N.D.Ohio 1988); In re Channel 2 Assocs., 88 B.R. 351, 352 (Bankr.D.N.M. 1988); In re Marlin Oil. Co., 83 B.R. 50, 51 (Bankr.D.Colo.1988). This court agrees. The court concludes, therefore, that allowance of compensation to Gambrell, Clarke, Anderson & Stolz under 11 U.S.C. § 503(b)(3)(D) and (b)(4) is inappropriate and unauthorized.

Likewise the court is not persuaded that the doctrine of quantum meruit provides a justifiable basis for compensation, as applicant urges. Quantum meruit is an equitable remedy applied to the law of contracts to avoid unjust enrichment for services rendered under a contract implied by law. See E. Farnsworth, Contracts 98–99 (1982); Black's Law Dictionary 1119 (5th ed. 1979). While this court does not hold that there are no circumstances under which compensation might be awarded under such a theory, this is not such a case. Cf. In re Watson Seafood & Poultry Co., 40 B.R. 436, 440 (Bankr.E.D.N.C.1984) (court may deviate from general rule where need for attorney discipline outweighed by equities of the case); see also 11 U.S.C. § 328(c) ("court may deny allowance of compensation ... [if attorney] is not a disinterested person, or represents or holds an interest adverse to the interest of the estate") (emphasis added). Mr. Anderson, as a fiduciary trustee and member of the applicant law firm, knew from the beginning that a possible conflict of interest existed. Yet, he chose to proceed. Since prior court approval of attorney employment is a statutory requisite known to Mr. Anderson and the law firm, as experienced bankruptcy attorneys, there could be no valid employment contract, express or implied. As noted previously, the equities of this case simply do not support applicant.

Even if there had been no conflict, neither Mr. Anderson nor any other member of his firm was authorized to provide legal services to the trustee. Without court approval and appointment, an application for compensation for professional services may be denied pursuant to 11 U.S.C.

§ 328. See In re William A. Smith Constr. Co., 92 B.R. at 759 (professional services compensable out of estate's assets only if authorized by the court prior to being rendered); In re Florida Brethren Homes, Inc., 92 B.R. 536, 537 (Bankr.S.D. Fla.1988) (noncompliance with section 327(a) and Bankruptcy Rule 2014 generally leads to forfeiture of compensation even to professionals who furnished valuable services to the estate); In re Yeisley, 64 B.R. 360 (Bankr.S.D.Tex.1986) (without court authority person rendering services considered a volunteer).

The court notes that there is authority for the exercise of the court's inherent equitable powers to authorize the appointment of a professional person nunc pro tunc under exceptional circumstances. Fanelli v. Hensley (In re Triangle Chemicals, Inc.), 697 F.2d 1280, 1289 (5th Cir. 1983). However, this applicant has made neither a request for such appointment nor a showing of exceptional circumstances. Nor are the equities in favor of such retroactive appointment where, as here, the professional seeking compensation has a known conflict of interest. See Hunter Sav. Ass'n v. Baggot Law Offices Co. (In re Georgetown of Kettering, Ltd.), 750 F.2d 536, 540 (6th Cir.1984) (nunc pro tunc appointment denied as result of actual conflict of interest).

It appears that Mr. Anderson could have determined that a conflict of interest existed by simply reviewing the debtor's schedules and conferring with his own law partners. The situation was further aggravated by the unauthorized rendering of legal services to the trustee for which compensation is now sought "as if" the law firm represented one of the entities specified in section 503(b)(3)(D). The fact that the trustee did not review the debtor's schedules after learning of a possible conflict before providing legal services does not balance the equities in applicant's favor. This court cannot condone or permit a trustee, or an attorney representing a trustee, to circumvent the requirements of section 327(a) by seeking an administrative

expense allowance under section 503(b)(3)(D) and (b)(4). Accordingly, it is

ORDERED that the application for allowance of compensation, as amended, is DENIED.

IT IS SO ORDERED.